AYRES, Judge.
The plaintiff sued the defendant for the sum of $3,842.50 for physical pain and suffering and mental anguish, for doctor and hospital bills and for loss of wages as the result of injuries sustained in an accident which occurred at approximately 12:50 p. m. April 19, 1952, just north of the intersection of South Franklin Street and East Jefferson Avenue in Bastrop, Louisiana.
From a judgment in favor of plaintiff for $1,842.50, itemized as $116 for hospital expense, $64 for doctor bills, $162.50 for loss of wages, and $1500 for physical pain and suffering, defendant prosecutes a devolutive appeal to this court.
On the occasion of said accident, plaintiff alleges she was being transported by her daughter in her daughter’s car to her place of employment located on South Franklin Street in Bastrop. She was being driven in an easterly direction on East Jefferson Avenue and turned left at the intersection with South Franklin Street and stopped in front of Seligman’s, Inc., just beyond the intersection. After stopping, she alleged that she opened the car door and was in the act of alighting therefrom when her daughter’s car was struck from the rear by an automobile operated by the defendant. It is con *573 tended that defendant drove his automobile into the parked car without reducing his speed, applying his brakes or taking other precautions to avoid the accident. She claims also that from the force of the impact the right door pillar post was driven against her with great force and, as a result of said accident, she suffered severe and painful personal injuries, including shock, a severe sacro-iliac strain, severe contusions and mild lacerations of the right shin, with considerable swelling and inflammation. Defendant was charged specifically with negligence in failing to keep a proper lookout and to keep his automobile under control, inattentiveness to surroundings, and driving in a grossly negligent and reckless fashion.
Defendant’s answer assumes the form of a general denial and alleges that the accident was caused by the negligence of the driver of the vehicle in which plaintiff was a passenger and for whose acts plaintiff is responsible as both she and the plaintiff were engaged in a joint venture. Specifically, plaintiff’s daughter was charged with bringing her automobile to a sudden and unforeseen stop while partly in the intersection and without giving any signal or other warning of her intention to stop. In effect, it is alleged that the driver’s negligence is imputed to plaintiff, and for that reason it is contended she was guilty of contributory negligence. Defendant further asserted that the accident could not have caused the injuries complained of and contended that whatever injuries plaintiff sustained were occasioned by a prior accident with other parties and for which she had been paid.
The trial judge has favored us with a written opinion, in which he has, in our opinion, correctly summarized the facts. He stated:
“The facts indicate that the plaintiff was employed as a saleslady in Selig-man’s, Inc., a general merchandise store in Bastrop; that on April 19, 1952, the plaintiff’s daughter was driving her mother in an easterly direction along East Jefferson Street toward Seligman’s, Inc. Seligman’s, Inc. is located on the East side of South Franklin Street, facing west. When plaintiff’s automobile arrived at the intersection of South Franklin and East Jefferson Streets, the car turned left on South Franklin Street and stopped in front of Seligman’s, Inc. As plaintiff was alighting from the car, preparatory to going into Selig-man’s, Inc., as she had one foot on the ground and one foot in the car, the automobile in which plaintiff was riding was struck from the rear by the defendant’s car which was also trailing the plaintiff’s car in an easterly direction down East Jefferson and made the left turn at South Franklin.
“The contention of the plaintiff and her daughter is that they made their left turn, the daughter who was driving extending her left hand, indicating that she was going to make a stop; that she made a complete stop and had been in a stationary position long enough for her mother, the plaintiff herein, to partially alight from the car when it was struck by the defendant, in the rear.
“The defendant’s contention is that the plaintiff made her left turn and stopped abruptly, the rear end of the car in which plaintiff was riding extending into the intersection, and due to the fact that plaintiff’s car came to a stop so abruptly without any indication or signal whatsoever, that it was impossible to avoid the accident.
“There is not a great deal of dispute as to how the accident happened. The plaintiff drove east along East Jefferson, turned in front of a truck to the left on South Franklin and came to a stop. The defendant who was behind the plaintiff made his left turn 'behind the truck, that is, the truck was between the defendant’s car and the car in which the plaintiff was riding.
*574 “Two firemen, who were sitting in front of the fire station at the time the accident happened from SO to 75 feet from the point of impact, a man who had parked his car immediately in front of Seligman’s, Inc. but across the street on the west side and who had gotten out of his car and was standing in the street waiting for traffic to pass, and also a man who was standing directly in front of Selig-man’s, Inc. and saw the accident, testified as to what happened. All of these witnesses were disinterested, had no reason or occasion to color their testimony whatsoever.
“One of the firemen, John Walter White, stated that immediately after the crash, he ran to the scene of the accident, and the plaintiff was standing outside the car with her leg injured and that the defendant struck the rear of the plaintiff’s automobile.
“Maurice Grimes, the other fireman, testified that he ran to the scene of the accident, put the plaintiff in his car and carried her to the hospital.
“J. H. Craig was standing on the west side of the street directly in front of the scene of the accident waiting for traffic to pass in order to go across the street to Seligman’s, Inc. He stated positively that the driver of the car in which plaintiff was riding, extended her hand to signal a stop and that she had come to a complete stop and that the plaintiff had one foot on the ground when her car was struck from the rear by the defendant’s car.
“A. H. McClain was standing in front of Seligman’s, Inc. and saw the defendant’s car strike the rear of plaintiff’s car. He saw the plaintiff by the side of her car and caught her before she fell. The car door was open and as a result of the impact, the door swung forward and back, striking the plaintiff’s leg.
“From the testimony of these witnesses, the Court is convinced that the plaintiff’s daughter signaled that she was going to stop and that she had come to a complete stop and the plaintiff was alighting from the car when she was struck from behind.
“The Court is convinced that the sole and proximate cause of the accident was the defendant’s failure to observe the car in which plaintiff was riding, stopped in front of him. Had he been keeping a proper lookout, he could have stopped and he is charged in law with seeing that which he could have seen and should have seen. The plaintiff did all that the law required in extending her hand in a signal to stop and she had been at a complete stop long enough for the plaintiff to park and alight from the car.
⅜ ⅜ ⅜ sfc ⅜ ⅜
“Immediately after the accident the plaintiff was taken to the Bastrop General Hospital where her leg was X-rayed and then she was sent to her family physician, Dr. George W. Wright of Monroe.
“Dr. Wright testified that upon examination, he found the plaintiff to be suffering from a severe injury to her back, in a state of shock, and a terrible bruise and hematoma formation on the right shin, with a mild degree of laceration on the same leg. He further stated that she was hospitalized for a period of twelve days. Dr. Wright also stated that Mrs. Parker, the plaintiff, had had an old back condition, which he had pretty well controlled up until the time of the accident; that she had had a hy-pertrophic condition, a slipping of the joint where the backbone is coupled onto the hip, the sacroiliac joint.
“Dr. John Hundley, of Bastrop, examined the plaintiff on April 6, 1953. Pie stated that his objective findings were hypertension with a scar on the *575 right leg; that his subjective findings were tenderness from skull to base of sacrum; that the plaintiff’s spine was tender all the way down.
“Dr. Wright testified that the plaintiff had suffered considerable pain”.
Counsel for appellant zealously contends that plaintiff is a habitual claimant and that she clearly perjured herself as a witness and that her testimony should be rejected as unworthy of belief. An examination of the evidence clearly substantiates the charge. It is certainly most reprehensible and incomprehensible that a witness with the intelligence and experience possessed by plaintiff would so flav grantly depart from the truth when a frank admission would have been in order. “An honest confession is good for the soul” — of ' the witness. It is of inestimable worth in a court of justice. This testimony had reference to prior injuries, operations and illness which plaintiff wil-fully denied but subsequently admitted after it was evident that proof' was available. These incidents, although collateral to the issues here and especially as to the nature, extent and duration of the injuries claimed by this accident, were, of course, very material. However, we know of no law under which a party who gives false testimony can be denied relief if such party’s rights and claims are adequately and independently established by other testimony. In this case, the testimony of plaintiff can be completely discredited and rejected from all consideration. The testimony of the other witnesses is sufficient to sustain plaintiff’s burden of proof in making out her claim.
Under the facts and circumstances of this case, it is our opinion that the award made by the district court is excessive and should be reduced. Following the accident, plaintiff was carried to the Wright-Bendel Clinic at Monroe, where she remained for twelve days, and was treated by Dr. George W. Wright, who testified that upon her arrival, she had a severe injury to her back and a terrible bruise with a hematoma formation on the right shin, and a mild degree of laceration on the right leg, and that she was in very much pain and experiencing considerable shock. Dr. Wright continued to treat plaintiff after she left the hospital until shortly before the trial, which was approximately a year following the accident. According to the doctor’s testimony, plaintiff lost weight and became anemic as a result of the accident, and, in his opinion, plaintiff would probably suffer some permanent pain to her back.
It would serve no good purpose to elaborate upon a long history of various physical infirmities and disabilities, and their nature and extent, suffered by plaintiff, but it suffices that the pain of which she complains should not be attributed entirely to the injuries received in this accident. More than likely, the degree and extent of pain, suffering and disability sustained following this accident were partly due to and aggravated by previously existing physical conditions. We are convinced, from all of the testimony, that shé did suffer pain over a period of several weeks and lesser pain and discomfort for a considerable longer period of time and was disabled.
For these reasons and on the ground that plaintiff’s difficulty is not wholly caused by or traceable to injuries sustained in the accident but aggravated thereby, it is our belief that the award should be reduced and that the sum of $1,000 for physical pain and suffering is adequate and sufficient under the circumstances of this case. The proof sustains the other items allowed by the trial court.
The judgment appealed from is therefore amended by reducing the award in plaintiff’s favor to $1,342.50, and, as thus amended, is affirmed, at appellant’s cost.